**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Rebecca A. T.,  )<br> )<br>       Plaintiff,   )<br> )<br>       v.              )<br> )<br>Frank Bisignano,   )<br>Commissioner of Social Security,  )<br> )<br>       Defendant.  )  | Case No.: 24-cv-50015<br><br>Magistrate Judge Margaret J. Schneider |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Rebecca A. T., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, Plaintiff's motion to reverse and remand the Commissioner's decision [14] is denied and the Commissioner's motion for summary judgment [17] is granted.

**BACKGROUND**

    **A.**    **Procedural History**

On September 16, 2021, Rebecca A. T. ("Plaintiff") filed an application for disability and disability insurance benefits, and an application for supplemental security income. R. 17. In both applications, Plaintiff alleged a disability beginning on September 28, 2019. *Id.* The Social Security Administration ("Commissioner") denied her application on January 11, 2022, and upon reconsideration on July 11, 2022. *Id*. Plaintiff filed a written request for a hearing on August 17, 2022. *Id*. On February 23, 2023, a telephonic hearing was held by Administrative Law Judge ("ALJ") Frederick Andreas where Rebecca A. T. appeared and testified. Plaintiff was represented by counsel. *Id.* At the hearing, an impartial vocational expert, Matthew Lampley, also testified. *Id*.

On April 26, 2023, the ALJ issued his written opinion denying Plaintiff's claims for disability insurance benefits. R. 17-26. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's brief in support of her motion to reverse and remand the Commissioner's decision [14], the Commissioner's motion for summary judgment, and response to Plaintiff's brief [17], and Plaintiff's reply brief [26].

### B. The ALJ's Decision

In his ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 28, 2019. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy; s/p left shoulder injury with s/p left shoulder arthroscopy; distal clavicle excision; debridement of a partial rotator cuff tear and acromioplasty of 3/4/21; right shoulder impingement with s/p arthroscopic Mumford procedure; right arthroscopic subacromial decompression and right shoulder arthroscopic debridement on 4/18/19; and fibromyalgia. R. 19-20. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. R. 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 20.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work, except that she is limited to a sit/stand option and can stand for one hour and then needs to sit for five minutes. She is limited to occasional climbing of ladders, ropes, and scaffolds and can occasionally stoop, kneel, crouch, crawl and balance. Overhead reaching with the dominant left upper extremity is limited to frequent but no limitation in all other direction and no limitation with the right upper extremity. Plaintiff must avoid concentrated exposure to dangerous moving machinery and unprotected heights and cannot perform commercial driving. R. 21-24. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 25. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including collator operator, routing clerk, and sorter. R 24-25. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from September 28, 2019, through the date of decision, April 26, 2023. R. 25.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); see also *Warnell*, 97 F.4th at 1054; *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("While we have never required an ALJ to address

every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits.").

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

Plaintiff argues the ALJ: (1) erred by improperly relying on the VE's testimony at step 5 in formulating the RFC as to the sit/stand option because the VE's testimony was in conflict with the Agency's Dictionary of Occupational Titles ("DOT"); (2) improperly "played doctor"; (3) failed to build a logical bridge between his conclusions and the medical record; and (4) failed to properly account for Plaintiff's mental health conditions. Because the Court concludes that the ALJ's findings were well-supported by substantial evidence, Plaintiff's motion to reverse and remand the Commissioner's decision is denied.

### A.     No conflict between VE testimony and DOT

First, Plaintiff argues that the ALJ improperly relied on the VE's testimony in crafting the sit/stand option in Plaintiff's RFC because his testimony was in conflict with the DOT. Plaintiff takes the position that the VE, Matthew Lampley, did not properly explain what he based his opinions and conclusions on, nor did he indicate that he had a greater degree of expertise than provided for in the DOT.

At the hearing, in response to a hypothetical posed by the ALJ, Mr. Lampley testified that an individual with the restrictions set out by the ALJ would not be able to perform Plaintiff's past relevant work but would be able to perform the unskilled light work of collator operator, routing clerk, or sorter. R. 52-54. Plaintiff's attorney added to the hypothetical a sit/stand option. R. 55. To that, Mr. Lampley testified that the three alternative jobs would still be available. R 55-56. Plaintiff argues that Mr. Lampley failed to explain how he reached the conclusion that these three jobs would be available to Plaintiff considering the DOT does not specify if a sit/stand option is viable for these jobs. She further argues that "an option to sit is very unlikely" as to these three jobs. Therefore, according to Plaintiff, the ALJ's reliance on the VE testimony cannot be based on substantial evidence.

However, since the DOT does not specify a sit/stand limitation as to these three jobs, the Court does not find a conflict between the VE's testimony and the DOT. In *Brown v. Colvin*, the Seventh Circuit held that the ALJ did not err in accepting the VE's testimony that there were six alternative jobs that plaintiff could perform sitting or standing and where plaintiff could be off-task up to 10% of the time while doing so because this testimony "merely supplemented (and did not conflict with) the Dictionary of Occupational Titles (DOT), which means that [plaintiff]

3

forfeited these arguments by failing to object to the testimony during the administrative hearing." *Brown*, 845 F.3d 247, 254 (7th Cir. 2016). Plaintiff's argument that "an option to sit is very unlikely" is speculation and conjecture. Additionally, at the hearing the ALJ initially asked Mr. Lampley: "…do you understand that if you give an opinion that conflicts with the information in the Dictionary of Occupational Titles or the selected characteristics of occupations that you need to advise us of the conflict and the basis for your opinion?" Mr. Lampley responded: "I will." R. 51. Mr. Lampley did not identify any conflicts, nor was his testimony challenged or subject to any clarification by Plaintiff's counsel during the hearing.[1] The Court finds that the ALJ supported his step 5 findings with substantial evidence by relying on the VE's testimony at the hearing.

### B. ALJ did not "play doctor"

Plaintiff next argues that the ALJ improperly "played doctor" when executing his decision. Specifically, Plaintiff argues the ALJ did not analyze the medical record but "merely summarize[d]" it, spending only four paragraphs on the testimony and medical treatment, using boilerplate language and failing to meet his required burden of explaining and supporting his decision. [14], p. 8. The Seventh Circuit has held that "an ALJ may not 'play doctor' and interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (citations and quotations omitted).

The ALJ's review of Plaintiff's medical record is not extensive. One page of the decision is dedicated to a review and summary of Plaintiff's relevant medical history. Here, the ALJ first evaluated the records as they related to Plaintiff's September 2019 left arm injury stemming from a work fall. Those records included diagnosis, x-rays, MRI, left shoulder arthroscopy surgery, and follow-up treatments. Next, the decision stated that Plaintiff complained of low back pain and was diagnosed with degenerative disc disease of the lumbar spine with lumbosacral radiculopathy. The ALJ further noted the results of two MRIs in 2019 and 2022, physical examinations, treatment, and medications. The decision then indicated that Plaintiff was diagnosed with fibromyalgia. The ALJ's decision stated a summary of Plaintiff's treatment notes and Plaintiff's subjective pain reports. It goes on to detail Plaintiff's history of impingement syndrome of the right shoulder with incomplete rotator cuff tear. From this, Plaintiff underwent right shoulder complete arthroscopic surgery in 2019. The decision further noted that Plaintiff had a history of right carpal tunnel syndrome and underwent corrective surgery in 2018.

The Court does not disagree that the ALJ summarized Plaintiff's medical records as part

---

[1] Even if the Court found a conflict between the DOT and the VE's testimony (which it does not), any error would be harmless. At the time of the hearing, SSR 00-4p was in effect. Under that Ruling, an ALJ was required to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs…and information in the…DOT." SSR 00-4p. However, SSR 00-4p was rescinded as of January 6, 2025, and replaced with SSR 24-3p, which no longer requires the ALJ to identify these conflicts ("…the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified"). Because SSR 24-3p would be applied if the ALJ's decision were to be remanded, any error would be harmless. *See Lorenzo K. v. Commissioner of Social Security*, Case No. 3:23-CV-550-SJF, 2025 WL 938495, at * 9 (N.D. Ind. March 27, 2025) ("An ALJ's failures do not merit reversal when they are harmless.").

of his decision. However, the Court does not find error. "An ALJ need not discuss every detail in the record as it relates to every factor. Summaries of medical evidence, while definitionally 'partial and selective,' are appropriate." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citing *Gedatus*, 994 F.3d at 901, 903.). Additionally, Plaintiff fails to bring to the Court's attention any portion of the ALJ's decision where medical evidence was improperly interpreted. In her brief, Plaintiff argues: "There was ample evidence to find Claimant disabled. Had the ALJ properly reviewed and analyzed the file he would have concluded Claimant was disabled." Despite this assertion, Plaintiff fails to provide the Court with any evidence or citation to the medical record in support. The Court cannot find that the ALJ "played doctor" by reviewing and summarizing Plaintiff's medical records, albeit however brief. *See Patricia B. v. Berryhill*, No. 17 CV 50201, 2019 WL 354888, at * 2 (N.D. Ill. Jan. 29, 2019) ("An ALJ plays doctor by ignoring relevant medical evidence and using his judgment to make his own medical findings; in contrast, he does *not* play doctor when he discusses and weighs the medical evidence and makes appropriate inferences from that evidence." (emphasis in original).); *Olsen v. Colvin*, 551 Fed. Appx. 868, 874 (7th Cir. 2014) ("The cases in which we have concluded that an ALJ 'played doctor' are ones in which the ALJ ignored relevant evidence and substituted her own judgment.").

### C. Logical bridge between ALJ conclusions and medical record

Plaintiff's third argument is that the ALJ failed to build a logical bridge between his conclusions and the medical record, stating: "Throughout the very brief ten-page decision the ALJ makes sweeping conclusions without any explanation as to how he reached them." [14], p. 9. Plaintiff's argument is supported only by the example of the ALJ's conclusions as to the medical opinions. "An ALJ need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Langley v. O'Malley*, No. 22-3008, 2024 WL 3649021, at * 2 (7th Cir. Aug. 5, 2024) (citations and quotations omitted).

As to the medical opinion of state agency physician Dr. Bharati Jhaveri, the ALJ found this opinion persuasive. The ALJ's decision noted that Dr. Jhaveri found that Plaintiff could perform light work with occasional climbing of ladders, ropes, scaffolds, and occasional crawling and frequent reaching overhead on the left. The ALJ found these limitations consistent with the evidence. However, the ALJ also found that the overall evidence established that Plaintiff was further limited to a sit/stand option. R. 23. Regarding the opinion of the state agency physician Dr. Jennifer Western, the ALJ also found this opinion persuasive as to the same limitations found by Dr. Jhaveri. Dr. Western found that Plaintiff could perform medium work. The ALJ went on to note that subsequent evidence in the record established that Plaintiff was more limited and could only perform a range of light work. *Id*. As to the opinion of Dr. Callina Elgar, the ALJ found her opinion not persuasive. As set forth in the ALJ's decision, Dr. Elgar found that Plaintiff could lift and carry less than ten pounds; stand and walk for less than two hours and sit for less than two hours. She also found that Plaintiff can sit for ten minutes at a time, stand for five minutes before changing positions, and walk for five minutes at a time. She further found that Plaintiff could occasionally twist and never stoop, crouch, climb stairs, or ladders, and that Plaintiff would require the ability to change positions at will, and would need to lie down at unpredictable intervals during a work shift for five to ten times a day, and would be absent more than three times a month. *Id*. The ALJ found that the overall evidence did not establish that Plaintiff was limited to that extreme. *Id*.

5

Plaintiff argues that the ALJ's analysis of these three medical opinions was unsupported and without citations to the record. The Court disagrees that the ALJ erred in his analysis of the medical opinions. The ALJ noted that he fully considered the medical opinions and the prior administrative medical findings. He set out the parts of the medical opinions he found persuasive, consistent with the RFC. As noted by the *Zurawski* court, the ALJ is not required to "address every piece of evidence or testimony in the record." The ALJ's decision merely needs to "provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski*, 245 F.3d at 889. Moreover, "[the court's] review proceeds with a light touch – not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025). Additionally, here the ALJ found that Plaintiff was more limited than reasoned by both Dr. Jhaveri and Dr. Western. As noted above, the ALJ found that the overall evidence established that Plaintiff could perform light work (not medium work, as determined by Dr. Western), and would require the limitation of a sit/stand option (not considered by either doctor). An ALJ finding that is more limiting than that of a state agency doctor "illustrat[es] reasoned consideration." *Burmester v. Berryhill*, 920 F. 3d 507, 510 (7th Cir. 2019). The ALJ's medical opinion conclusions are based on substantial evidence. *Pufahl v. Bisignano*, 142 F.4th 446, 454 (7th Cir. 2025) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted)).

Plaintiff otherwise states that the ALJ made "sweeping conclusions" (presumably throughout the decision) without explanation. She does not, however, draw to the Court's attention any specific "conclusions" (other than those of Drs. Jhaveri, Western, and Elgar) contained in the ALJ's decision. As the Seventh Circuit has held: "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). The Court finds any additional argument as to the ALJ's "sweeping conclusions," waived.

### D. Mental health conditions properly accounted for

Finally, Plaintiff argues that the ALJ failed to account for Plaintiff's mental health conditions by "cherry picking" parts of the medical record that were unfavorable to Plaintiff's application and ignoring favorable statements.

The Court notes that "[a]n impairment or combinations of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activity." 20 C.F.R. § 404.1522(a). The ALJ found that Plaintiff's mental impairments of anxiety/obsessive compulsive disorder and major depressive disorder, considered alone and in combination with other impairments, did not cause more than minimal limitations in her ability to perform basic work activities and, therefore, would be considered non-severe. R. 20. The ALJ cited to multiple notations in Plaintiff's treatment notes finding Plaintiff's mental status exams normal and finding Plaintiff well-oriented, well-groomed, cooperative with linear, with a logical thought process, and with a good fund of knowledge. *Id*. In his finding that Plaintiff's mental impairment were mild and non-severe, the ALJ noted he came to this conclusion after considering the four areas of mental

6

functioning set out in the disability regulations for evaluating mental disorders and in the Listings of Impairments at 20 C.F.R. Part 404, Subpart P., Appendix 1.

Additionally, as part of the RFC analysis, the ALJ noted that Dr. Steven Fritz, and Dr. Jeanne Yakin, completed state agency mental health capacity assessments. R. 23. The ALJ found their opinions persuasive because they each found that Plaintiff did not have a severe mental impairment, which was consistent with Plaintiff's overall medical record. R. 23. The Court is confident the ALJ considered the totality of Plaintiff's medical records as well as the mental health assessments. *Thorlton*, 127 F.4th at 1082 (court reviews an ALJ's decision as a whole when making determinations) (citing *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021)).

In further support of her position, Plaintiff notes that she testified at the hearing that she had difficulty leaving her home due to her mental health impairments and would suffer shakiness and feel nervous and anti-social. The ALJ's decision does acknowledge Plaintiff's testimony, noting "[s]he further testified that she has anxiety and depression and there are some days when she does not want to leave the house." R. 21. However, the ALJ found Plaintiff well able to perform many activities of daily living including personal care, caring for her dogs, and sharing custody of her children. *Id*. Moreover, to the extent that Plaintiff attempts to bring an argument that any of her non-severe mental limitations should have been included in the ALJ's RFC, this argument is significantly undeveloped and, therefore, waived.[2] "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). The Court finds that the ALJ properly considered Plaintiff's non-severe mental health impairments, and the RFC is supported by substantial evidence.

The ALJ properly relied on the VE testimony in formulating the sit/stand option in the RFC, did not improperly "play doctor," built a logical bridge from the evidence to his conclusions, and properly accounted for Plaintiff's mental health conditions. The Court find that the ALJ's conclusions and findings are supported by substantial evidence in the record.

## CONCLUSION

For these reasons, Plaintiff's motion to reverse and remand the Commissioner's decision [14] is denied and the Commissioner's motion for summary judgment [17] is granted.

Date: August 15, 2025         ENTER:

*Margaret J. Schneider*
United States Magistrate Judge

---

[2] Plaintiff fails to cite to any case law in direct support of her arguments in this section of her brief.